**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DWIGHT FRANKLIN BLACKMON,

       *Plaintiff,*

       *v.*

HAYNES-LOVE,
SPENCER BURKE,
GOMEZ,
JOHN DOE, and
BREWER,

       *Defendants.*

_____/

CASE NO. 16-12671

DISTRICT JUDGE LINDA V. PARKER
MAGISTRATE JUDGE PATRICIA T. MORRIS

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS BREWER, GOMEZ AND HAYNES-LOVE'S
MOTION FOR SUMMARY JUDGMENT(Doc. 23)</u>**

**I.**     <u>RECOMMENDATION</u>

    For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, (Doc. 23), be **GRANTED**.

**II.**     <u>REPORT</u>

    **A.**     **Introduction**

    Plaintiff Dwight Franklin Blackmon is a state prisoner who filed a *pro se* complaint that was transferred to this Court on July 19, 2016 alleging deliberate indifference to his serious medical needs. (Doc. 1). On that same day, Plaintiff's application to proceed *in forma pauperis* was granted. (Doc. 2). On October 14, 2016, the case was referred to the undersigned magistrate judge. (Doc. 15). Shortly thereafter, on October 27, 2016,

Defendants Beverly Haynes-Love ("Haynes-Love"), Daniel Gomez ("Gomez"), and Shawn Brewer ("Brewer") filed the instant motion for summary judgment. (Doc. 23). Plaintiff responded (Doc. 28) and Defendants replied. (Doc. 30.)

Plaintiff's claim arises from events occurring in April 2015. He alleges that in early April, he "began to have difficulties climbing on[]to; or down[]off of the [top bunk] in which he was assigned." (Doc. 1 at ID 4). He complained to Defendant Haynes-Love that "his nerves and motor skills are [a]ffecting his ability to function properly [and] that he almost fell off the top bunk twice," but she responded "'so you['re] planning on falling off of your bunk is that it.'" (*Id.*). On April 8, 2015, Plaintiff "started having chest pains" and Defendant Spencer Burke, a nurse, "evaluated Plaintiff [and] determined he needed to be seen by the [d]octor." (Doc. 1 at ID 5). Burke issued Plaintiff "a special accommodation medical detail of (1) Bottom bunk; and (2) Lay-in from work/gym." (*Id.*). But Plaintiff further contends that Haynes-Love declined to acknowledge his order with some animosity and perpetrated rumors that he planned to fall from his bunk. (*Id.*). After waiting for someone to implement the order "to no avail" the evening of April 8, Plaintiff attempted to climb onto the top bunk and "eventually fell, hitting his back on the steel bunk" and crashing "to the floor." (*Id.*). Due to Haynes-Love's alleged rumors, Gomez told Plaintiff's cellmate—who had called for help—that "he is not going to call Healthcare." (Doc. 1 at ID 6). Plaintiff did not rise until the next morning when "he regained his strength . . . ." (*Id.*).

That same morning, Plaintiff "was again injur[ed]" while "[a]ttempting to reach the [top bunk]." (Doc. 1 at ID 7). In anger, he "walked to the officers' desk and demanded to

see the facility Health care staff," but Gomez again refused to call anyone. (*Id.*). He waited until the correctional officers were forced to call a nurse, whereupon "he was handcuffed and then placed in . . . segregation." (*Id.*). Later that day, after speaking with Sgt. Morvin, he was released back into the general population. (*Id.*). The following day, Dr. Charles S. Jansen re-issued his bottom bunk detail. (*Id.*).

On April 12, 2015, Plaintiff filed a grievance against Haynes-Love "for acting with deliberate indiffer[e]nce" towards his health and refusing to follow the policy directive that he be placed on the bottom bunk. (Doc. 1 at ID 7-8, 22). The grievance coordinator J. Rohry informed him on April 30, 2015, that an extension of time had been granted for a Step I response. (Doc. 1 at ID 8). Burke later saw Plaintiff in healthcare on May 13, 2015, ordered another week of bed rest, and granted a three-month extension of his bottom bunk detail "for his bodily pains . . . ." (*Id.*). That day, Plaintiff was interviewed by "R. Davidson on Grievance," who told him that "he had nothing"; Haynes-Love meanwhile indicated that she did not have authority to move a prisoner with a bottom bunk detail in her interview. (*Id.*). In the grievance response that Plaintiff received, Davidson wrote that Plaintiff "was not willing to participate in the interview and he did not want to add any more information[] or give any information for a possible resolution," and found the grievance unsubstantiated. (*Id.*); *see also* (Doc. 1 at ID 24). On or about May 20, 2015, Haynes-Love terminated Plaintiff for requesting "lay-in for medical problems." (Doc. 1 at ID 9) (internal quotation marks omitted).

Plaintiff timely appealed his Step I denial on May 29, 2015, suggesting that Haynes-Love's professed lack of authority, as well as outright refusal, to accommodate Plaintiff's

bottom bunk assignment violated his rights. (Doc. 1 at ID 9, 25). He also sought to "place[] on notice" nameless officers working in the "control center" who failed to implement his medical order, for the same alleged constitutional violation. (*Id.*). Brewer penned the Step II response denying Plaintiff's grievance because "unit officers do not have the authority to move or deny prisoner moves," and because Plaintiff was "placed in a bottom bunk on April 10, 2015 to accommodate the medical accommodation." (Doc. 1 at ID 10, 26). Brewer also indicated that Haynes-Love "stated she does not have authority to move prisoners and denied ordering you [to] get on the top bunk or informing third shift not to move you." (Doc. 1 at ID 26).

Plaintiff again timely appealed his Step II denial to Step III, and the response he received indicated "that the issues were considered and appropriately responded to at the facility level." (Doc. 1 at ID 10-11, 27-28).

## B. Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88.

Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C. Analysis

As an initial matter, all Defendants in this suit are state officials claiming Eleventh Amendment immunity, to which they are entitled. "[I]f a lawsuit against state officials under 42 U.S.C. § 1983 alleges a constitutional claim," the Eleventh Amendment prohibits a federal court from "awarding damages against the state treasury even though the claim arises under the Constitution." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Despite this 'official-capacity' immunity, Defendants remain potentially liable for conduct in their individual capacity. To this end, Defendants present several arguments as to why Plaintiff's claims for monetary damages should fail, including: (1) Plaintiff failed to exhaust administrative remedies against Gomez, Brewer, and Burke; and (2) Defendants are entitled to qualified immunity. As I find these grounds sufficient to grant summary

judgment in each Defendant's favor, I decline to reach their other arguments regarding official capacity immunity and personal involvement of each defendant.

### 1. Plaintiff Failed To Exhaust Administrative Remedies Against Gomez and Brewer

As Defendants correctly note, "[t]he sole grievance [Plaintiff] filed regarding these incidents was against [] Haynes-Love only," and not against "Gomez or [] Brewer." (Doc. 23 at ID 140). Because Plaintiff "failed to adhere to MDOC's grievance procedure, he deprived MDOC an opportunity for its administrative process to resolve the allegations against [] Gomez or [] Brewer contained in this suit." (*Id.*). Defendants thus ask this Court to dismiss Plaintiff's claims against Gomez and Brewer for failing to exhaust administrative remedies against them.

#### a. Standards

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion"

means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time, the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies--specifically, the level of detail required in a grievance to put the prison and individual officials on notice of the claim." 549 U.S. at 205, 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity the Court did not find that the PLRA required it. *Id.* at 218. However, the current MDOC policy requires this level of specificity. MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007).

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is an affirmative defense. *Id.*

### b.     *MDOC policy*

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC PD 03.02.130(eff. 7/9/2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint

in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal Form. . . ." The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD

03.02.130(B),(FF),(GG). *Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

### c.   *Application and analysis*

The only two grievances that Plaintiff fully exhausted through Step III are numbers JCF-15-04-0902-17i and JCF-15-01-0063-02z . (Doc. 23 at Ex. 2, ID 169.)

Grievance JCF-15-01-0063-02z complains that Plaintiff was not given back pay for a work assignment and is not related to the claims made in this case.

Grievance JCF-15-04-0902-17i complains that Defendant Haynes-Love violated Plaintiff's 8th Amendment and due process rights because although he was given a bottom bunk detail, he was not provided with a bottom bunk and, as a result, he fell and hurt his back while trying to get on to the top bunk. (Doc. 23 at ID 171.) The only mention of Defendant Gomez was at the Step I level when Plaintiff states that he "spoke with 3rd shift Officer Gomez after falling off my bunk at or near 12:30 a.m. – 4/9/15 – Thursday morning." (Doc. 23 at ID 173) Plaintiff also complained that Defendant Haynes-Love "alert[ed] 3rd shift officers 'not to move me on a bottom bunk.'" (*Id*.) Since the grievance only names Defendant Haynes-Love as a person who potentially violated his rights, Plaintiff has only fully exhausted his administrative remedies against Defendant Haynes-Love. MDOC PD 03.02.130(R). Accordingly, the complaint should be dismissed as to Defendants Gomez and Brewer for this reason.

### 2.    Qualified Immunity

Defendants' motion invokes quailed immunity as a defense to Plaintiff's suit. (Doc. 23 at ID 21-25). The analysis of a qualified immunity claim involves three inquiries:

(i)    "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). Courts are no longer required to address these inquiries sequentially; instead a court may use its sound discretion to determine which of the prongs of the qualified immunity analysis should be considered first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

Deliberate indifference to an inmate's serious medical needs violates a clearly established right. *E.g.*, *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 545 (6th Cir. 2008); *McKee v. Turner*, 124 F.3d 198, at *4 (6th Cir. Aug. 25, 1997) ("[I]t would not make any sense to permit a prison official who deliberately ignored the serious medical needs of an inmate to claim that it would not have been apparent to a reasonable person that such actions violated the law."). Demonstrating such indifference requires an "objective" component—"the existence of a sufficiently serious medical need"—and a "subjective"

component—the defendant "'recklessly disregard[ed] th[e] risk'" the prisoner's medical need posed. *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015) (quoting *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008)). An inability to fulfill either prong will defeat an inmate's constitutional claim. *See, e.g.*, *Jarriett v. Wilson*, 162 F. App'x 394, 402-03 (6th Cir. 2005).

The evidence in this case could arguably foster a genuine issue of material fact as to whether Plaintiff's alleged impairment was sufficiently serious. "A medical need is 'serious' if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Thompson v. Maxey Boys Training Sch.*, 2003 WL 21373166, at *3 (E.D. Mich. Apr. 30, 2003) (citing *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988)). The record shows that Burke issued a medical detail order on April 8 and 10, 2015, for a "bottom bunk[,]" a "lay-in from work-gym," and a "lay-in from work only" and that Burke continued Plaintiff's bottom bunk assignment on May 13, 2015. (Doc. 1 at ID 17-19). Although it is unclear what Plaintiff's diagnosis was or what was causing his alleged difficulties, the fact that he was given a bottom bunk detail at least shows that there was some reason for concern that Plaintiff might tumble from the top bunk.

Nevertheless, I suggest that there is no genuine issue of material fact as to whether Haynes-Love's conduct could meet the subjective component of the test. An official "cannot be liable for risk of which he is unaware." *Powell v. Henry*, No. 05-70435, 2007 WL 551587, at *4 (E.D. Mich. Feb. 13, 2007). To fulfill the subjective component, a

Prisoner must show that the defendant official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official "also dr[e]w the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *cf. Soles v. Ingham Cty.*, 316 F. Supp. 2d 536, 542 (W.D. Mich. 2004) ("If defendants are shown merely to have failed to act in the face of an obvious risk of which they should have known but did not, they were not deliberately indifferent." (internal quotation marks omitted)). Defendant Haynes-Love states, in an affidavit, that she does not have the authority to move an inmate to a bottom bunk, and that "at no point did I have any reason to believe that Blackmon had a serious medical need or was exposed to a substantial risk of harm." (Doc. 23 at ID 184.)

Plaintiff's complaint avers that Defendant Haynes-Love "told Plaintiff 'you seem to be moving just fine so get back to work" and that Defendant Haynes-Love predicted he would fake falling off his bunk. (Doc. 1 at ID 4.) Although Plaintiff cites these comments to show that Defendant Haynes-Love was unkind to him, the comments also show that Haynes-Love was unaware of any serious medical need and thus was not acting with sufficient culpability. *See*, *Dorch v. Stallman*, No. 2:09-cv-224, 2011 WL 673953, at *4 (W.D. Mich. Feb. 17, 2011)(granting summary judgment to defendants who discontinued bottom bunk detail because they believed Plaintiff was faking falls from the top bunk). Of note, Plaintiff does *not* allege that Haynes-Love knew his condition was serious, or that he had fallen from his bunk. This evidence thus shows that Haynes-Love simply *did not believe* Plaintiff's complaints. The fact that the medical order Plaintiff allegedly showed

her included neither a diagnosis nor an explanation as to why it was issued validates this conclusion.[1]

Even if a genuine issue of material fact existed as to whether Plaintiff's constitutional rights were violated, I suggest that any such right would not be clearly established, nor could Defendant Haynes-Love's actions be considered objectively unreasonable. *Radvansky, supra.*

Accordingly, I find that Defendant Haynes-Love is entitled to qualified immunity and that the motion for summary judgment should be granted for this reason.

### D.    Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, (Doc. 23), be **GRANTED**.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may

---

[1] Defendants also note that Haynes-Love lacked personal authority to implement Plaintiff's bottom-bunk order. This contention appears to be accurate. *See* MDOC Policy Directive, *Medical Details and Special Accommodation Notices*, No. 04.06.160, at 2 (2008) ("BHCS [Bureau of Healthcare Services] staff shall immediately notify housing unit staff and the control center by telephone whenever a Medical Detail or Special Accommodation Notice is issued which requires immediate attention."). However, this fact does not, as Defendants suppose, advise against a finding that Haynes-Love was deliberately indifferent. "Officials act with deliberate indifference if they know of a substantial risk to an inmate's safety, yet disregard that risk by failing to take reasonable measures to abate it." *Lewis v. McClennan*, 7 F. App'x 373, 375 (6th Cir. 2001) (finding a sheriff and jailer not deliberately indifferent for failing to foresee an attack upon an African American inmate by seven white inmates). At the summary judgment stage, I would be especially reluctant to find conclusively that Haynes-Love—if aware of a substantial risk to Plaintiff's health—would not be expected to take a single precaution in Plaintiff's favor. However, since I suggest there is insufficient evidence that Defendant Haynes-Love was aware of any serious risk, the above situation is not present on these facts..

respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 15, 2017                    S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Dwight Franklin Blackmon #850454 at Bellamy Creek (MSP), Bellamy Creek Correctional Facility, 1727 W. Bluewater Hwy., Ionia, MI 48846.

Date: February 15, 2017                     By s/Kristen Castaneda
                                            Case Manager